# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: September 24, 2014

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | UNPUBLISHED |
| BUEL DEAN HAMILTON, | * | |
| | * | No. 11-476V |
| Petitioner, | * | |
| | * | |
| v. | * | Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Dismissal Decision; Insufficient |
| AND HUMAN SERVICES, | * | Proof of Causation; Vaccine Act |
| | * | Entitlement; Influenza (Flu) Vaccine; |
| Respondent. | * | Meningococcal Vaccine; Guillain-Barré |
| * * * * * * * * * * * * * * | * | Syndrome (GBS) |

## DECISION[1]

On July 21, 2011, Buel Dean Hamilton ("petitioner"), filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] Petitioner alleged that a trivalent influenza ("flu") vaccination and/or a meningococcal vaccination, both of which he received in November 2009, caused him to suffer from Guillain-Barre syndrome ("GBS") and related sequelae.

After filing the petition in this case, petitioner filed ten exhibits between July 2011 and December 2013, which include a vaccination record, several sets of hospital records, records related to follow-up medical care, neurology records, and an affidavit. He filed a Statement of Completion on October 27, 2011.

Respondent filed a report pursuant to Vaccine Rule 4(c) on January 5, 2012, recommending against an award of compensation to petitioner. A review of the medical records

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 and note (2006)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2006) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

filed in this case demonstrates that petitioner had a complicated medical history, even prior to his receipt of the flu vaccine in November 2009, which includes a history of coronary artery disease, hypertension, and a left below-knee amputation due to a traumatic injury. Petitioner's Exhibit (Pet. Ex.) 4 at 1972. Several days before petitioner received the subject flu vaccination, he was seen at the hospital for complaints of blisters and bleeding in his mouth. Id. at 2209. Petitioner was diagnosed with idiopathic thrombocytopenia purpura. Id. Petitioner's blood tests were also positive for a hepatitis C viral infection and antibody and he was admitted to the hospital. Id. at 2191, 2273, 2276; Pet. Ex. 6 at 99. Just prior to his discharge on November 3, 2009, petitioner received the flu vaccine which is the subject of this case. Pet. Ex. 4 at 2209, 2262. Approximately one week later, on November 10, 2009, petitioner received a meningococcal vaccination, a pneumococcal vaccination, and a haemophilus influenza b vaccination. Id. at 2150, 2180-81. Because of recurrent episodes of thrombocytopenia, petitioner underwent a laparoscopic splenectomy on November 23, 2009. Id. at 1966, 1968, 1979. It was not until December 21, 2009, when petitioner complained of numbness and weakness in his fingers and toes and an inability to ambulate, that he was diagnosed with Guillain-Barre syndrome ("GBS"). Id. at 1898, 1910.

In the Rule 4 report, respondent states that because of the lapse of time between the date that petitioner received the flu vaccine and the onset of his GBS, causation is "tenuous at best." Respondent's Rule 4 report at 10. Respondent also notes that petitioner sought treatment for a viral infection approximately 14 days prior to the onset of his GBS, providing what respondent contends is evidence of alternative causation. Id. Moreover, as noted above, respondent notes that petitioner's complicated medical history may have contributed to his injuries, and without an expert report, petitioner has failed to provide preponderant evidence of causation. Id. Thus, a status conference was held on January 12, 2012, during which petitioner was ordered to file an expert report by March 12, 2012.

Thereafter, petitioner requested and was granted a series of extensions to file an expert report. By October 30, 2011, petitioner had been granted nine such extensions.[3] The undersigned and the previous special masters assigned to this case initially granted extensions on the basis of petitioner's assertions that the parties were working towards an informal resolution and that petitioner was in the process of collecting medical records. Between December 2011 and December 2013, three sets of updated medical records were filed on March 14, 2013, August 20, 2013, and December 30, 2013.

On May 22, 2013, petitioner filed a status report stating that a demand letter had been sent to respondent. Respondent filed a responsive status report on June 11, 2013, advising that she was unable to engage in further settlement negotiations and recommending that petitioner proceed by filing his expert report. Thereafter, the undersigned granted two additional extensions to file an expert report, on August 29, and October 30, 2013, but advised petitioner that further enlargements of time would not be granted absent good cause shown. In the October 30, 2013 Order, the undersigned advised petitioner that if he was unable to file an expert report

---

[3] Extensions of time to file an expert report were granted on March 12, 2012; May 11, 2012; July 5, 2012; September 11, 2012; November 9, 2012; January 15, 2013; March 14, 2013; August 28, 2013; October 30, 2011.

by December 27, 2013, an Order to Show Cause would be issued as to why the petition should not be dismissed.

On December 26, 2013, petitioner filed a "third" motion for enlargement of time for a "renewed" deadline to file an expert report.[4]  On January 6, 2014, the undersigned issued an Order to Show Cause directing petitioner to respond by February 5, 2014, with an explanation as to why this case should not be dismissed.  Petitioner did not file a response to the Show Cause Order.  Rather, on February 3, 2014, he filed a motion entitled "Motion for Enlargement of Time and For Withdrawal of Counsel."  In the motion, petitioner's counsel stated that he had consulted Mr. Hamilton regarding how to proceed, and that Mr. Hamilton has elected to proceed with other counsel.

On February 28, 2014, a status conference was held and petitioner was again ordered to file an expert report by Friday, May 2, 2014, or the case would be dismissed.  The undersigned deferred on ruling on petitioner's counsel's motion to withdraw until such time that it was determined whether petitioner would be able to obtain a supportive expert opinion.

On May 2, 2014, petitioner filed a motion for enlargement of time requesting additional time for petitioner to continue with prosecution of his petition.[5]  Petitioner never obtained new counsel.  In support of his motion, petitioner stated that he was actively seeking another attorney to prosecute the petition.  In addition, petitioner represented that he "believe[d] that he has found a medical expert that will be able to draft a persuasive expert report in support of this Petition."  Petitioner's Status Report dated May 2, 2014.  Based on these statements, the undersigned granted petitioner's motion and set a deadline of July 1, 2014, for petitioner to file a status report updating the court on his progress in retaining new counsel and in obtaining an expert report.

On July 1, 2014, petitioner filed another motion for enlargement of time requesting additional time to continue with prosecution of his claim.  Petitioner's counsel stated that petitioner had been seeking to retain new counsel, but that counsel had difficulty reaching petitioner by telephone to obtain information on his progress.  Petitioner's counsel requested that a status conference be scheduled to determine the best steps for proceeding with this case.  A status conference was held on August 5, 2014.  No expert report has been filed and a Show Cause Order was issued on August 6, 2014, directing petitioner to file a response by September 19, 2014.

On September 19, 2014, petitioner's counsel filed a response to the Order to Show Cause.  In the response, counsel states that petitioner has not been able to retain a credible expert to

---

[4] While styled as a "third" motion for enlargement of time, this motion was petitioner's eleventh request for an enlargement of time to file the expert report.  Petitioner's eighth motion for enlargement of time was filed on May 13, 2013.  A status conference was held on May 30, 2013, after which a scheduling order was issued setting another deadline for petitioner to file an expert report.  Thereafter, petitioner began styling the next motions for enlargement of time as a "first", "second", and "third" motion, when in actuality these motions were the ninth, tenth and eleventh motions.

[5] This was petitioner's twelfth motion requesting additional time to file an expert report.

opine in support of his claim to the requisite level of probability to satisfy the Court. Counsel stated that after the Show Cause Order was issued in this case, a copy of the Order was sent to petitioner by certified mail (return receipt requested) on August 19, 2014, and was signed by petitioner indicating that the Order was received. Petitioner's counsel states that he has received no further communication from petitioner and has not received any indication that petitioner has retained alternative counsel to represent him. Petitioner's counsel confirms that petitioner has not filed an expert report and will not be filing any such report in the time frame allotted.

To receive compensation under the Vaccine Act, petitioner must prove either 1) that he suffered a "Table Injury" – i.e., an injury falling within the Vaccine Injury Table – corresponding to one of his vaccinations or 2) that he suffered an injury that was actually caused by a vaccine. See §§ 300aa-13(a)(1)(A) and 300aa-11(c)(1). The undersigned finds that petitioner has not provided preponderant evidence that he suffered a "Table Injury." The record does not contain a medical expert's opinion connecting the injuries and vaccination, and petitioner has indicated that no such report is forthcoming.

Under the Vaccine Act, a petitioner may not be awarded compensation based solely on the petitioner's claims. The petition must be supported by either medical records or the opinion of a competent physician. § 300aa-13(a)(1). Here, because the medical records alone are insufficient to establish entitlement to compensation, a medical opinion connecting the injuries and vaccinations must be offered in support. However, petitioner has provided no such opinion.

**Thus, this case is dismissed for insufficient proof. In the absence of a motion for review, the Clerk shall enter judgment accordingly.**

**IT IS SO ORDERED.**

                                              s/Nora B. Dorsey
                                              Nora B. Dorsey
                                              Special Master